
UNDER SEAL

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 1:15MJ123 |
| ) | |
| MUNEEB AKHTER ) | |
| SOHAIB AKHTER, ) | |
| ) | |
| Defendants. ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Gershon Ross, being duly sworn, depose and state as follows:

**INTRODUCTION**

1. I am a Special Agent with the United States Department of Homeland Security (DHS) and have been employed in that capacity since November 2011 and am currently assigned to the Office of the Chief Security Officer, Internal Security and Investigations Division (ISID). I have been a Special Agent / Investigator for the U.S. government for over 22 years. My current responsibilities include the investigation of violations of United States laws, including the misuse of government computer systems, and unauthorized access and disclosure of sensitive or classified information.

2. This affidavit does not contain every detail of every aspect of this investigation, but rather sets forth those facts that I believe are necessary to demonstrate probable cause to believe that, within the Eastern District of Virginia and elsewhere, MUNEEB AKHTER and SOHAIB AKHTER, conspired with each other, and others known and unknown, to knowingly and with intent to defraud

1

traffic in and use one or more unauthorized access devices during a one-year period, and by such conduct obtained things of value aggregating $1,000 or more during that period, said conduct affecting interstate commerce, in violation of 18 U.S.C. §§ 1029(a)(2) and (b)(2) (conspiracy to commit access device fraud).

3. The information in this affidavit is based on information obtained during the course of a criminal investigation conducted by DHS and includes evidence obtained from a search warrant, records obtained from companies in response to subpoenas, and interviews. Since this affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact known regarding this investigation.

## SUMMARY

4. Based on my investigation, there is probable cause to believe that MUNEEB AKHTER and SOHAIB AKHTER are involved in a scheme to defraud in which they obtained credit card account information belonging to other persons and used this information to make purchases throughout the country. In particular, MUNEEB AKHTER and SOHAIB AKHTER obtained compromised credit card numbers, which are unauthorized access devices. MUNEEB AKHTER and SOHAIB AKHTER used and conspired to use the unauthorized devices to make purchases, including airline tickets and other merchandise, at stores in the Eastern District of Virginia and elsewhere.

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

5. On June 25, 2014, I was notified that DHS contract employee MUNEEB AKHTER had boasted to co-workers about hacking several e-commerce sites, including Subway, Starbucks, and an unspecific airline. On June 26, 2014, I questioned MUNEEB AKHTER at the DHS St.

2

Elizabeths campus in Washington, DC. In a sworn statement, MUNEEB AKHTER told me that he created a computer code to gain unauthorized access to several e-commerce websites including K-Mart, Shell Gasoline, Whole Foods, Starbucks, and Dunkin Donuts. He stated that his computer code allowed him to add funds to gift cards without having to expend any actual funds. He admitted to using gift cards for personal use, as well as fraudulently placing funds on gift cards for others, also without expending funds.

6. On July 24, 2014, I and other law enforcement officers executed a federal search warrant at MUNEEB AKHTER's residence, 7510 Chancellor Way, Springfield, VA. Pursuant to the search warrant, I and other law enforcement officers seized several items including computers and cell phones.

7. Forensic analysis of a T-Mobile LG cell phone recovered from the residence revealed numerous audio files of phone conversations that were stored in the phone's memory. During many of these recorded conversations, MUNEEB AKHTER, his brother SOHAIB AKHTER, and Unindicted Coconspirator 1 (hereinafter "UCC-1") discussed their acquisition and possession of fraudulently obtained credit card numbers. The Akhter brothers and UCC-1 also discussed their use of credit card numbers and related account information, which they had fraudulently obtained from an e-commerce cosmetics company called Shea Terra Organics, to purchase goods and services.

8. On an audio recording dated June 5, 2014, I identified voices belonging to SOHAIB AKHTER and UCC-1. On the recording, SOHAIB AKHTER informed UCC-1 that MUNEEB AKHTER was obtaining credit card numbers via e-mail from a program that MUNEEB AKHTER had inserted onto computer systems for Shea Terra Organics. Specifically, SOHAIB AKHTER stated that MUNEEB AKHTER received twenty-four credit card numbers using a computer program

3

that automatically e-mailed credit card numbers to MUNEEB AKHTER. Based on my training, experience, and knowledge of the investigation, I believe that SOHAIB AKHTER and UCC-1 were discussing the theft of credit card numbers belonging to customers who purchased goods on Shea Terra's website.

9. My investigation revealed that UCC-1's mother was the registered agent for Shea Terra Organics.

10. On an audio recording dated May 27, 2014, I identified voices belonging to SOHAIB AKHTER and UCC-1. UCC-1 told SOHAIB AKHTER that he needed two credit card numbers to make a purchase. UCC-1 asked SOHAIB AKHTER for the login and password to a database file. He also told SOHAIB AKHTER not to worry and that they can get fifty more.

11. On an audio recording dated May 28, 2014, I identified voices belonging to SOHAIB AKHTER and UCC-1. SOHAIB AKHTER told UCC-1 that he thought Expedia would know credit card fraud but that they were fooled. UCC-1 asked SOHAIB AKHTER if "the flight" was purchased through Expedia. SOHAIB AKHTER replied that a flight, hotel, and rental car were all purchased through Expedia.

12. On an audio recording dated May 28, 2014, I identified voices belonging to SOHAIB AKHTER and MUNEEB AKHTER. MUNEEB AKHTER informed SOHAIB AKHTER that MUNEEB AKHTER would be delaying his return flight from California by a day. SOHAIB AKHTER asked MUNEEB AKHTER if he would be using any more credit cards to push back his flight. MUNEEB AKHTER responded that he would.

13. On an audio recording dated May 28, 2014, I identified voices belonging to MUNEEB AKHTER and SOHAIB AKHTER. MUNEEB AKHTER told SOHAIB AKHTER that

4

they should tell others that they were able to hack an airline's system and could get free rides wherever they want.

14. On an audio recording dated May 28, 2014, I identified voices belonging to SOHAIB AKHTER and UCC-1. UCC-1 told SOHAIB AKHTER not to worry about wasting cards because they can get cards whenever they want. Based on my training, experience, and investigation of this case, I believe SOHAIB AKHTER and UCC-1 were discussing the fact that they could acquire new credit card numbers and associated information from Shea Terra at will.

15. On an audio recording dated June 25, 2014, I identified voices belonging to MUNEEB AKHTER and SOHAIB AKHTER. MUNEEB AKHTER asked SOHAIB AKHTER if he had purchased a K-Mart gift card yet and if he had tried reloading it. Based on my training, experience, and investigation of this case, I believe MUNEEB AKHTER and SOHAIB AKHTER were discussing adding value to K-Mart gift cards using fraudulently obtained credit card numbers.

16. On an audio recording dated June 26, 2014, I identified voices belonging to SOHAIB AKHTER and UCC-1. SOHAIB AKHTER and UCC-1 discussed purchasing reloadable gift cards from K-Mart and adding value to them using credit cards. They agreed to meet at a local Sears because the K-Mart gift cards could also be used there.

17. On an audio recording dated June 26, 2014, I identified voices belonging to MUNEEB AKHTER and SOHAIB AKHTER. MUNEEB AKHTER asked SOHAIB AKHTER if the K-Mart cards worked. SOHAIB AKHTER indicated that the cards were working and that he had made purchases for items including "tablets" and "gas cards."

18. On an audio recording dated July 15, 2014, I identified voices belonging to SOHAIB AKHTER and UCC-1. SOHAIB AKHTER explained to UCC-1 that the computer program that

5

MUNEEB AKHTER described to DHS agents does not exist and was simply a cover for their true activity.

19. Pursuant to Grand Jury subpoena requests, I obtained records relevant to my investigation from Expedia.com, United Airlines, and U.S. Airlines. I identified approximately five flights for which MUNEEB AKHTER or his grandmother was listed as a passenger. The flights were paid for using credit card numbers and associated personal identifiers—including names and addresses—that belonged to individuals other than MUNEEB AKHTER, SOHAIB AKHTER, their grandmother, and UCC-1.

20. For one flight, records I obtained from Expedia.com indicated that "Muneeb Akhter" booked a round trip airline ticket from Washington, DC, to Los Angeles, CA, departing May 27, 2014, on U.S. Airways flights 1840 and 721 and returning May 29, 2014, on U.S. Airways flights 1832 and 1960. Records I obtained from U.S. Airways confirmed the purchase, with MUNEEB AKHTER listed as the passenger. A MasterCard credit card number ending in 6665 was used to make the purchase. The card holder's name was J.R., with an address in Elkland, PA. The total amount charged to that card for the airline ticket was $465.

21. I contacted J.R. telephonically and she stated that the airline ticket was purchased without her knowledge or authority and that the credit card account had subsequently been closed. J.R. also stated that, prior to the fraudulent charge, she had purchased items from the Shea Terra Organics website.

22. During his trip from May 27, 2014, to May 29, 2014, MUNEEB AKHTER reserved a hotel room at the Viceroy Hotel in Santa Monica, CA, and a rental car from Dollar Rent a Car. The charge for the hotel was $771.84 and the charge for the rental car was $45.98, for a total charge of

$817.82. Of this amount, an additional $176.41 was charged to the MasterCard credit card number ending in 6665 belonging to J.R. The remaining $641.41 was charged to a MasterCard credit card number ending in 1681. The card holder's name was D.F., with an address in Philadelphia, PA.

23. I conducted an open source Internet search of the social media website Facebook for SOHAIB AKHTER. I identified a Facebook page associated with an individual I believe to be SOHAIB AKHTER. Posted on SOHAIB AKHTER's Facebook page, I viewed an image of a United Airlines boarding pass for "Sohaib Akhter" departing January 19, 2015, from Washington, DC, to San Francisco, CA, on United Airlines flight 782. I contacted United Airlines, which confirmed that the flight was paid for with an American Express credit card number ending in 1001. The card holder's name was J.R. The total cost for the airline ticket charged to the credit card was $785.20.

24. During the course of my investigation, I determined that multiple online purchases of goods and services were made on behalf of both MUNEEB AKHTER and SOHAIB AKHTER using credit cards belonging to individuals other than the Akhter brothers. These goods and services included, but are not limited to, purchases from: online auction sites; an online printing company based in Nevada; a sporting goods retailer located in West Virginia; a food delivery service that makes deliveries in Northern Virginia; an information technology certification research and education organization located in Maryland; and information technology-related conferences that took place in Washington, DC.

25. Pursuant to a Grand Jury subpoena request, I obtained records of deliveries to the address 7510 Chancellor Way, Springfield, VA, from United Parcel Service. Based on my investigation, I determined that both SOHAIB AKHTER and MUNEEB AKHTER reside at that address. Relevant items delivered to the residence include:

A.  HP ENVY Laptop – Delivered on April 14, 2014 – Value $780.99

B.  Toshiba Chromebook – Delivered on April 15, 2014 – Value $306.90

C.  Amazon Kindle Fire Tablet – Delivered on April 15, 2014 – Value $131.99

D.  HP Wireless Printer – Delivered on April 23, 2014 – Value $131.99

26. I obtained records related to the purchase of the items listed in Paragraph 25 from the online auction website Deal Dash. These records indicated that fraudulently obtained credit cards were used to buy "bid units" on Deal Dash. Those "bid units" were used to win auctions for the items listed in Paragraph 25, which Deal Dash ultimately purchased and sent to the AKHTER residence.

27. Based on my investigation, the total amount charged for goods and services, between in or around April 2014 to in or around January 2015, which I attribute to fraudulent credit card activity conducted by MUNEEB AKHTER, SOHAIB AKHTER, and UCC-1, exceeded $25,000.00.

28. I identified and contacted approximately seven of the holders of the fraudulently used credit cards, whose names are J.R., D.F., C.W., A.B., L.L., A.H., and L.P. Each card holder confirmed that he or she was a victim of credit card fraud. Each card holder also confirmed that he or she made at least one online purchase from Shea Terra Organics using a credit card that was later associated with fraudulent activity.

29. Many of the fraudulent purchases identified above were made after the execution of the federal search warrant in July 2014. Most recently, I have identified fraudulent purchases benefitting SOHAIB AKHTER and MUNEEB AKHTER that occurred in December 2014 and January 2015.

30. For example, information provided to me by the Fairfax County Police Department indicated that in December 2014, MUNEEB AKHTER received shipments of archery equipment and registered for an information technology course. I contacted representatives at the companies who sold those goods and services. The representatives indicated that the goods and services had been purchased using credit cards belonging to individuals other than MUNEEB AKHTER, SOHAIB AKHTER, and UCC-1. The value of those goods and services was $592.94 for the archery equipment, $116.55 for shipment of course material for the information technology course, and $5,350.00 for registration for the information technology course.

31. As noted in Paragraph 23, SOHAIB AKHTER travelled from Washington, DC, to San Francisco, CA, on a flight booked with a fraudulently used credit card. According to information obtained from United Airlines, that reservation was booked on January 7, 2015.

32. Based on my training and experience in conducting criminal investigations, I believe that MUNEEB AKHTER and SOHAIB AKHTER's conduct affected interstate commerce. MUNEEB AKHTER and SOHAIB AKHTER used and conspired to use credit card accounts of financial institutions that operate throughout the United States at stores that operate in multiple states. Further, when an unauthorized credit card is used, it causes a financial transaction between the bank and other business entities such as the issuing bank for the card and the clearing center processing the transactions. In addition, as described in Paragraph 24, MUNEEB AKHTER and SOHAIB AKHTER conducted and conspired to conduct this scheme in multiple states, including Nevada, West Virginia, and Maryland.

## CONCLUSION

13. Based on the foregoing, there is probable cause to believe that, within the Eastern District of Virginia and elsewhere, MUNEEB AKHTER and SOHAIB AKHTER, conspired with each other, and others known and unknown, to knowingly and with intent to defraud traffic in and use one or more unauthorized access devices during a one-year period, and by such conduct obtained things of value aggregating $1,000 or more during that period, said conduct affecting interstate commerce, in violation of 18 U.S.C. §§ 1029(a)(2) and (b)(2) (conspiracy to commit access device fraud).

_____
Special Agent Gershon Ross
Department of Homeland Security

Sworn and Subscribed before me this 27th day of February, 2015.

_____/s/_____
John F. Anderson
United States Magistrate Judge

The Honorable John F. Anderson
United States Magistrate Judge

10